UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>) 04-cr-10098-WGY<br>)<br>MANUEL MENDES, CHRISTOPHER T. )<br>CUSTER, CARMEN FIGUEROA, )<br>DESIREE ALVES, WILLIAM TEJEDA, )<br>and JENNIFER PAVAO, )<br>)<br>Defendants. )<br>) | |

## DEFENDANT CHRISTOPHER T. CUSTER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS POST-ARREST STATEMENTS

### Introduction

Defendant Christopher Custer ("Custer") has been indicted with one count each of conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base. Custer hereby moves to suppress statements made by him after he was arrested in New York and during the booking procedure on the grounds that (1) the statements were made in violation of Custer's Miranda rights; and (2) the statements were obtained involuntarily in violation of his Fifth and Fourteenth Amendment rights. Custer further moves to suppress any evidence obtained as a result of the statements under the "fruit of the poisonous tree" doctrine.

### Facts Relevant to Suppression

On March 16, 2004, Custer was arrested, along with Catalin Canelo ("Canelo"), and co-defendants Jennifer Pavao ("Pavao") and William Tejeda ("Tejeda") in New York City. Subsequent to his arrest, Custer was transported by Special Agent Thomas Miller ("SA Miller") and Task Force Agent Brian Guiney ("TFA Guiney") to the NYFD for booking and processing.

(See Form DEA-6 dated April 14, 2004 attached hereto as Exhibit A). According to the DEA-6 report, immediately upon Custer's arrival, SA Miller and TFA Guiney gave Custer the normal Miranda warnings and attempted to interview him in an interview room adjacent to the booking room. Custer declined to make a statement at that time and stated that he wanted to talk to an attorney before making any statement.

Later, during the booking procedure, Custer supposedly made several statements to TFA Guiney after inquiring as to what was happening with Pavao, another defendant. According to the report, Custer told TFA Guiney that "he did the deal right on the sidewalk where he was apprehended." As stated in the report, when TFA Guiney asked Custer if he did the deal inside a building, Custer said that "the deal took place on the sidewalk" and that "he was ready to do the deal on Boston Rd, but 'the guy' called him and switched the location." Custer allegedly further told TFA Guiney that "he handed the money to 'the guy' and in return the SOS handed him the cocaine." Finally, according to the report, Custer said that Canelo "was just giving him a ride back to his car." At no time during the booking procedure when he allegedly made these statements was Custer properly advised of his *Miranda* rights.

<u>Argument</u>

## I. THE GOVERNMENT AGENTS' FAILURE TO PROPERLY ADVISE CUSTER OF HIS *MIRANDA* RIGHTS PRIOR TO QUESTIONING HIM RENDERS THE STATEMENTS INADMISSIBLE

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that an individual being held for custodial interrogation must be informed of his right against self-incrimination and his right to consult with counsel and have counsel present during the interrogation. *Miranda*, 384 U.S. at 467-71. The Fifth Amendment requires the exclusion of any statement made by an accused during custodial interrogation unless he has been advised of his right to

remain silent and to have an attorney present during questioning and he has voluntarily waived those rights. *United States v. Porter*, 764 F.2d 1, 7-8 (1st Cir. 1985). Suppression is so required because "the failure to administer *Miranda* warnings creates a presumption of compulsion." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985).

### A.   Custer was subjected to custodial interrogation when the statements were made

First, it is clear that Custer was subject to a custodial interrogation at the time the statements were made. Custodial interrogation has been defined as questioning by law enforcement officers of a defendant "who has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. In determining whether a suspect is in custody, the crucial question is whether he was in fact "restrained or reasonably perceived himself to be restrained." *Id.* at 439. Factors considered in determining whether one is in custody include the place of interrogation, whether the investigation has begun to focus on the suspect, the nature of the interrogation, and whether the suspect was free to leave at the time the incriminating statement was made. *Berkman v. McCarthy*, 468 U.S. 420, 422 (1984). Custer was questioned and made the statements during the booking procedure at the NYFD. Investigators had already begun to focus on Custer and the questioning was formal and concerned a specific drug deal, rather than conversational. Further, since Custer was in the process of being arrested and booked, he was not free to leave. Therefore, he was subject to custodial interrogation within the meaning of *Miranda*.

### B.   Custer did not knowingly, intelligently, and voluntarily waive his Miranda rights during the custodial interrogation

The government bears the heavy burden to prove beyond a reasonable doubt that the statements made by a defendant were obtained properly and that the rights were validly waived.

3

*Miranda*, 384 U.S. at 475-76. A defendant's statements must be suppressed where the conclusion that they are voluntary does not appear from the record with absolute clarity. *Eisen v. Picard*, 452 F.2d 860, 863 (1st Cir. 1971). Here, the agents did not inform Custer of his Miranda rights prior to questioning him during the booking procedure. At most, according to the DEA-6, the agents had given the warnings earlier and merely asked Custer of he was aware of his rights during the booking. (See Exhibit A). However, "merely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. *Miranda* requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them." *Porter*, 764 F.2d at 11, citing *United States v. Christian*, 571 F.2d 64 (1st Cir. 1978). Therefore, because the agents failed to properly inform Custer of his rights during booking, any statements made by Custer in response to the questioning are *per se* excludable.

### C. Custer unequivocally invoked his right to counsel thereby rendering the subsequent questioning inadmissible.

Even if the Court finds that Custer did receive his Miranda warnings at the time of his arrest, his statements should still be suppressed because he was questioned after invoking his right to counsel. *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Miranda*, 384 U.S. at 474. It is well settled that if the police "subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible...." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991). As stated in the DEA-6 Form, Custer clearly and unequivocally invoked his right to counsel upon arriving at the NYFD. Therefore, the police were not permitted to question him further, unless Custer himself initiated further communication. *Edwards*, 451 U.S. at 484-85; *Miranda*, 384 U.S. at 474. Merely asking about what was happening with Pavao does not qualify as

initiating further communication with the police. The government has not and cannot sustain its burden of showing beyond a reasonable doubt that Custer's act in inquiring about Pavao constituted a voluntary, knowing and intelligent waiver of his right to have counsel present. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983). Therefore, all of Custer's statements obtained after he invoked his right to counsel should be suppressed.

## II. CUSTER'S STATEMENTS WERE INVOLUNTARILY MADE AND THEREFORE MUST BE SUPPRESEED UNDER THE FIFTH AMENDMENT

In addition to proving formal compliance with Miranda, the government must also demonstrate that any incriminating statements obtained from Custer were made voluntarily. *Mincey v. Arizona*, 437 U.S. 385, 398 (1977) (holding that government may make no use of statement involuntarily obtained from defendant in violation of the Fifth Amendment); *Lego v. Twomey*, 404 U.S. 477, 484 (1972). A statement is involuntary if the will of the defendant "was overborne in such a way as to render his confession a product of coercion." *Spano v. New York*, 360 U.S. 315, 320-21 (1959). Factors considered in determining whether a statement or confession is voluntarily made include the time between arrest and arraignment, whether the defendant knew the nature of the offense at the time, whether he was told that he was not required to make a statement, whether he was advised of his right to counsel and whether he was without the assistance of counsel at the time of the questioning. 18 U.S.C. § 3501. Moreover, courts can consider the personal history, education, intelligence and the manner in which the officers elicit the statement. *Arizona v. Fulminante*, 499 U.S. 279, 286 n.2 (1991). *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (stating that court must look at the totality of the surrounding circumstances).

Custer's statements were not made voluntarily. He expressed to the agents that he was more concerned with what Pavao and repeatedly asked what was happening with her to which TFA Guiney responded that her fate depended on what she did to help the investigators. (See Exhibit A). This evidently prompted Custer to make the statements about the drug deal that preceded the arrest. These statements were therefore not the product of an "essentially free and unconstrained choice" and must therefore be suppressed. *Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir. 1991), *cert. denied Estelle v. Collazo*, 502 U.S. 1031 (1992).

### III. ALL EVIDENCE DERIVED FROM CUSTER'S STATEMENTS MUST BE SUPPRESSED AS TAINTED BY THE INITIAL *MIRANDA* VIOLATION

Since the government agents did not advise Custer of his rights prior to his statements, all evidence derived therefrom is tainted as "fruits of the poisonous tree" and must therefore be suppressed. *Wong Sun v. United States*, 371 U.S. 471 (1963). To hold otherwise would, in effect, sanction the initial violations of Custer's constitutional guarantees. The exclusionary rule as announced in Wong Sun applies to "fruits" of statements taken from defendants in violation of their constitutional rights. *Brown v. Illinois*, 422 U.S. 490, 597-604 (1975). Therefore, any evidence obtained by the agents as a result of Custer's statements must be suppressed.

### Conclusion and Request for Hearing

WHEREFORE, for the foregoing reasons, Custer respectfully requests that his Motion be granted. In the alternative, Custer requests a hearing to resolve any disputed issues of fact. Custer respectfully submits that the admission of his statements is a preliminary question and, as such, requires a factual hearing outside of the jury's presence and sufficiently in advance of trail so as to allow the defendant to adequately prepare for trial if necessary. *See Jackson v. Denno*, 378 U.S. 368 (1984).

                    CHRISTOPHER T. CUSTER,

                    By his attorney,

                    /s/ Mark D. Smith
                    Mark D. Smith, BBO# 542676
                    Laredo & Smith, LLP
                    15 Broad Street, Suite 600
                    Boston, MA 02109
                    (617) 367-7984

Dated: March 17, 2005

## CERTIFICATE OF SERVICE

I, Mark Smith, attorney for Defendant Christopher T. Custer hereby certify that on this date I served the within Memorandum of Law in Support of Motion to Suppress Post Arrest Statements by causing a copy to be delivered by regular mail, postage prepaid, to:

Thomas J. Ford, Esq.
141 Tremont Street
Suite 400
Boston, MA 02111

John LaChance, Esq.
600 Worcester Road
Suite 501
Framingham, MA 01701

Page Kelley, Esq.
Federal Defenders
408 Atlantic Avenue
Boston, MA 02210

David J. Apfel, Esq.
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109

Michael C. Andrews, Esq.
Law Offices of Michael C. Andrews
21 Custom House Street
Suite 920
Boston, MA 02110

Susan Poswistilo, Esq.
United States Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA 02210

_____
Mark Smith
Laredo & Smith, LLP
15 Broad Street, Suite 600
Boston, MA 02109
(617) 367-7984

Dated: March __, 2005

8