UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,                )<br>                                                              )<br>v.                                                           )<br>                                                              )     04-cr-10098-WGY<br>MANUEL MENDES, CHRISTOPHER T.    )<br>CUSTER, CARMEN FIGUEROA,          )<br>DESIREE ALVES, WILLIAM TEJEDA,  )<br>and JENNIFER PAVAO,                        )<br>                                                              )<br>       Defendants.                                   )<br>                                                              ) | |

## DEFENDANT CHRISTOPHER T. CUSTER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SEVER DEFENDANTS

Introduction

Defendant Christopher Custer ("Custer") and each of the co-defendants referenced above have been indicted with one count each of conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base. Custer hereby moves to sever his case from that of co-defendants William Tejeda ("Tejeda") and Jennifer Pavao ("Pavao") on the grounds Tejeda and Pavao made statements to law enforcement officials placing Custer at the scene of the crime. If there is a joint trial at which Tejeda and Pavao exercise their constitutional right not to testify, the introduction by the government of their statements would violate Custer's constitutional right to confrontation of witnesses under *Bruton v. United States*, 391 U.S. 123 (1968).

Facts Relevant to Suppression

Custer, Tejeda, and Pavao have been indicted with one count each of conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base arising out of the same series of events. On March 16, 2004, Custer, Pavao, Tejeda and Catalin Canelo ("Canelo") were arrested in New York City. According to the DEA-6 Report dated April 14, 2004, Tejeda

and Pavao both made statements to law enforcement, implicating Custer and placing him at the scene of the crime. (A copy of the DEA-6 Report is attached hereto as Exhibit A).

After Tejeda was transported to the NYFD, he told Task Force Agent Brian Guiney ("TFA Guiney") that "he has dealt with a couple of (drug) runners, including Custer" after co-defendant Manuel Mendes ("Mendes") was arrested and incarcerated on an earlier charge. Tejeda told TFA Guiney that he thought that Custer was an informant and had set him up. Tejeda further stated that he dealt with co-defendant Carmen Figueroa ("Figueroa") to negotiate the deal and then with Custer on a two-way Nextel cellular telephone when Custer got close to New York. Finally, Tejeda said that he did the instant drug deal with Custer near his place of employment. (See Exhibit A).

During Pavao's booking procedure at the NYFD, she told TFA Guiney that she was not aware that Custer was picking up cocaine in New York City; denied being Custer's girlfriend; and that she made this trip to New York with Custer to go shopping. (See Exhibit A).

Argument

### ADMITTING TEJEDA AND PAVAO'S EXTRA-JUDICIAL STATEMENTS IMPLICATING CUSTER WOULD VIOLATE HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees the right of a criminal defendant to be confronted by the witnesses against him. *Bruton v. United States*, 391 U.S. 123 (1968). The right to cross-examine adverse witnesses is included in the right to confrontation. *Id.* At a joint trial of two or more defendants, therefore, the admission in evidence of the extra-judicial statement of a non-testifying co-defendant which implicates another defendant violates that defendant's right to confrontation. *Id.* at 126. *See also Cruz v. New York*, 481 U.S. 186, 193 (1987) (stating that Confrontation Clause bars admission of co-defendant's statement at trial, even if jury is instructed not to consider it against the particular

defendant). The rationale underlying Bruton is that "a confession that incriminates an accomplice is so 'inevitably suspect' and 'devastating' that the ordinarily sound assumption that a jury will be able to follow faithfully its instructions could not be applied." *Lee v. Illinois*, 476 U.S. 530, 542, quoting *Bruton*, 391 U.S. at 136.

This case gives rise to a classic "*Bruton* problem" requiring severance. Tejeda and Pavao gave statements to the authorities shortly after the arrests at the NYFD, which the government intends to introduce in its case-in-chief against Custer. During his statement, Tejeda admitted that: a) Custer was a drug runner, whom Tejeda dealt with Mendes was incarcerated; b) he thought that Custer was an informant and had set him up; c) he communicated with Custer on a two-way Nextel cellular telephone when Custer got close to New York; and d) conducted the instant drug transaction with Custer near his place of employment. (See Exhibit A). Additionally, Pavao told authorities that she was not aware that Custer was picking up cocaine in New York City and that she made this trip to New York with Custer to go shopping.

These statements directly and expressly incriminate Custer as they place him at the scene of the crime, describe Custer as one of Mendes's drug runners, and describe the process by which the defendants worked together to complete the deal. Moreover, these statements are highly damaging as the government is proceeding on a conspiracy theory. The statements are "powerfully incriminating" on their face and cannot be cured by a limiting instruction. *Richardson v. Marsh*, 481 U.S. 200, 208 (1987); *United States v. Smith*, 46 F.3d 1223, 1228 (1st Cir. 1995). This situation falls squarely within the standard set forth in *United States v. Kahaner*, 203 F. Supp. 78, 81-82 (S.D.N.Y. 1962), *aff'd*, 317 F.2d 459 (2nd Cir. 1963):

> The ultimate question is whether, under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon the defendant's own acts,

3

> statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him?

*Id.* Custer has made a strong showing of a serious risk of prejudice, thereby requiring severance. *United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993).

Moreover, the fact that Custer made a statement to authorities does not alter this conclusion. In *Cruz*, the Supreme Court stated that severance under these circumstances is required "where a non-testifying co-defendant's confession incriminating the defendant is to be introduced even if the defendant's own confession is admitted against him." *Cruz*, 481 U.S. at 193 ("even a co-defendant's confession that corroborates the defendant's confession significantly harms the defendant's case.").

Therefore, without the opportunity to cross-examine Tejeda and Pavao, the introduction of their statements at a joint trial with Custer where Tejeda and Pavao do not testify would deny Custer his right to confront them, in violation of *Bruton* and its progeny. Therefore, Custer's Motion to Sever Tejeda and Pavao should be allowed.

## Conclusion

WHEREFORE, for the foregoing reasons, Custer respectfully requests that his Motion be granted.

CHRISTOPHER T. CUSTER,

By his attorney,

/s/ Mark D. Smith
Mark D. Smith, BBO# 542676
Laredo & Smith, LLP
15 Broad Street, Suite 600
Boston, MA 02109
(617) 367-7984

Dated: March 11, 2005

4