UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MANUEL MENDES, CHRISTOPHER T.<br>CUSTER, CARMEN FIGUEROA,<br>DESIREE ALVES, WILLIAM TEJEDA,<br>and JENNIFER PAVAO,<br><br>Defendants. | 04-cr-10098-WGY |

## DEFENDANT CHRISTOPHER T. CUSTER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE (GPS DEVICE)

### Introduction

Defendant Christopher Custer ("Custer") has been indicted with one count each of conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base. Custer hereby moves to suppress all evidence obtained as a result of the government's installation of global positioning system ("GPS") devices on cars rented from Avis and operated and/or occupied by Custer. As grounds for his Motion, Custer states that the evidence in question was obtained as the result of unreasonable and unconstitutional searches and seizures in violation of Custer's Fourth and Fourteenth Amendment rights.

### Facts Relevant to Suppression

On or about April 1, 2004, Custer and co-defendants Manuel Mendes ("Mendes"), Carmen Figueroa ("Figueroa"), Desiree Alves ("Alves"), William Tejeda ("Tejeda"), and Jennifer Pavao ("Pavao") were indicted with one count each of conspiracy to distribute and to

possess with intent to distribute cocaine and cocaine base. Custer was arrested in March 16, 2004 in New York City.

As part of its investigation of Custer and his co-defendants, the government installed GPS tracking devices on Avis rental cars rented by Custer's mother and operated and/or occupied by Custer on three separate occasions in January – March, 2004. The first GPS device was installed on an Avis rental car on or about January 12, 2004 and the car was subsequently rented by Custer's mother, June Bettencourt ("Bettencourt"), on January 22, 2004 in Hyannis, Massachusetts. (See DEA-6 Form Dated 1/28/04, attached hereto as Exhibit A) (See also Affidavit of Sean E. Balcolm, ¶ 21 ("Balcolm Aff.", attached hereto as Exhibit B). Custer allegedly drove the rental car to New York City, with Pavao, that same day. See Exhibit A. After the car was returned to Avis, authorities removed the system from the car and downloaded the information onto a computer disc. The data allegedly indicated that the car was driven to Boston Road, Bronx, New York, and then to Camp Street in Yarmouth, Massachusetts. (See Form DEA-7 Dated 4/6/04 attached hereto as Exhibit C).

On or about February 17, 2004, Bettencourt rented another automobile from Avis, which had been equipped by authorities with a GPS device. (See DEA-6 Form Dated 2/18/04 attached hereto as Exhibit D). Authorities used the GPS device to follow the car from Custer's residence at 18 Murphy Road in Hyannis to Camp Street and then to New York. (Balcolm Aff. ¶¶ 23-25). According to the DEA-6 form, Custer drove the car to Camp street and Pavao drove the car, with Custer as a passenger, from Camp Street to New York. Authorities again downloaded the information gathered by the GPS system onto a computer disc. (See DEA-7 Form dated 4/30/04 attached hereto as Exhibit E).

Finally, authorities installed another GPS system on an Avis car, rented by Bettencourt on March 16, 2004. (See DEA-6 Form Dated 3/25/04 attached hereto as Exhibit F and DEA-6 Form Dated 3/29/04 attached hereto as Exhibit G). According to the DEA-6 forms, authorities again used the GPS device to follow Custer and Pavao to New York in the rental car. On this occasion, authorities had also installed a "kill switch" in the vehicle. (See Exhibit G). According to the DEA-6 form, after the vehicle arrived in New York, Custer, who had been driving the car, parked and exited the car and walked down 42nd Street. (See Exhibit G). Pavao allegedly drove the rental vehicle eastbound on 42nd Street after Custer got out. When authorities could not catch up with the car, they activated the "kill switch," causing Pavao to stall. After catching up with the car, the "kill switch" was reactivated, allowing Pavao to restart the car and proceed east on 42nd Street. (See Exhibit G). Custer was subsequently arrested while riding in a Toyota Camry on Madison Avenue. (See Exhibit G). Authorities downloaded this information onto another computer disc (See DEA-7 Form Dated 3/24/04 attached hereto as Exhibit H).

Argument

I. **THE INSTALLATION AND MONITORING OF THE GPS DEVICES AND DOWNLOADING OF THE DATA WITHOUT A WARRANT VIOLATED CUSTER'S FOURTH AMENDMENT RIGHTS**

The United States Supreme Court has not squarely addressed whether modern GPS devices like the ones used here implicate a defendant's Fourth Amendment rights. The District Court of Maryland has recently distinguished the installation and use of a GPS device from a beeper, which police may generally place in a car and use it for monitoring purposes without obtaining a court order. *United States v. Berry*, 300 F. Supp. 2d 366, 368 (D. Md. 2004); *see also United States v. Knotts*, 460 U.S. 276 (1983) (upholding warrantless monitoring of beeper device installed inside container placed in an automobile); *United States v. Karo*, 468 U.S. 705

(1984)(holding that installation of beeper with consent of container's owner did not constitute search or seizure). The *Berry* court stressed that the Supreme Court's analysis in *Knotts* and *Karo* may not cover a GPS device, which, unlike a beeper, is a "substitute for police surveillance." *Berry*, 300 F. Supp. 2d at 368. Noting the unsophisticated nature of the beeper, the Berry court concluded that the Supreme Court may decide that "the new technology is so intrusive that the police must obtain a court order before using it." *Id.* Indeed, one Magistrate Judge in Massachusetts has noted that federal law enforcement officers "have more or less routinely sought" court authorization for the installation and monitoring of electronic tracking devices. *In re Application of the United States for an Order Authorizing the Installation, Monitoring, Maintaining, and Removing of Electronic Transmitting Devices ("Beepers") and Infra-Red Tracking Devices on or Within a White Ford Truck VIN 1FDKE37H3HHB79229*, 155 F.R.D. 401, 402 (D. Mass. 1994).

This situation is likewise distinguishable from the elementary beepers that were the subject of the *Knotts* and *Karo* decisions. The authorities installed *and used* sophisticated GPS tracking devices and downloaded the stored information to retrace the car's exact whereabouts on the dates in question. Therefore, because Custer had a legitimate expectation of privacy in the vehicles, the failure to obtain a warrant prior to installing and using the devices violated his Fourth Amendment rights. See *Karo*, 468 U.S. at 713 n.3 (stating that "despite this holding…such monitoring without a warrant may violate the Fourth Amendment"). Any and all evidence obtained as a result of the use of the GPS devices should be suppressed.

## II. THE AUTHORITIES' USE OF THE KILL SWITCH CONSTITUTED A WARRANTLESS SEIZURE AND VIOLATED CUSTER'S FOURTH AMENDMENT RIGHTS

Even if the Court deems that the warrantless installation and use of the GPS devices was proper, all evidence obtained as a result of the installation and use of the "kill switch" should nonetheless be suppressed. According to the DEA-6 Form, the officer purposefully used the "kill switch" to stall the car in order to catch up with the vehicle and for no other reason. In so doing, the officer acquired physical control over the car. This act of intentionally depriving Pavao of dominion and control over the car and her freedom of movement constituted a seizure within the meaning of the Fourth Amendment. *See Willhauck v. Halpin*, 953 F.2d 689, 716 (1st Cir. 1991) (holding that for a seizure to occur, there must be "an acquisition of physical control" and officer's act of pursuing vehicle with flashing lights did not constitute a seizure); *McIntyre v. United States*, 336 F. Supp. 2d 87, 101-03 (D. Mass. 2004), *citing Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (stressing that Fourth Amendment seizure occurs when there is a governmental termination of movement through "means intentionally applied").

According to the *Brower* Court, while a seizure would not occur when a suspect loses control of his own car during a high speed chase, a seizure did occur when the police set up a roadblock, intending to terminate the defendant's freedom of movement in the exact manner in which it happened. *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). This scenario far closely resembles the roadblock set up by authorities. Here, the officer intentionally caused the rental car to stall in order to terminate its freedom of movement. Therefore, a seizure has occurred. *See id.* Moreover, the use of the "kill switch" was far more intrusive than merely installing a beeper on the exterior of an automobile. Therefore, the government's failure to

5

obtain a warrant prior to installing and using the "kill switch" violated Custer's Fourth Amendment rights. As a result, all evidence obtained therefrom should be suppressed.

## Conclusion and Request for Hearing

WHEREFORE, for the foregoing reasons, Custer respectfully requests that his Motion be granted. In the alternative, Custer requests a hearing to resolve any disputed issues of fact. Custer respectfully submits that the admission of tangible property is a preliminary question and, as such, requires a factual hearing outside of the jury's presence and sufficiently in advance of trail so as to allow the defendant to adequately prepare for trial if necessary. *See Jackson v. Denno*, 378 U.S. 368 (1984).

                CHRISTOPHER T. CUSTER,

                By his attorney,

                _____
                Mark D. Smith, BBO# 542676
                Laredo & Smith, LLP
                15 Broad Street, Suite 600
                Boston, MA 02109
                (617) 367-7984

Dated: March __, 2005