UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>CHRISTOPHER T. CUSTER, et al., )<br>)<br>Defendants. )<br>) | Crim. No. 04-10098-WGY |

**CHRISTOPHER CUSTER'S MEMORANDUM OF LAW
IN SUPPORT OF SENTENCING PURSUANT TO
<u>STATUTORY AND GUIDELINES PROVISION FOR COCAINE POWER</u>**

Defendant Christopher T. Custer has pled guilty and awaits sentencing on a single-count indictment charging him with a conspiracy to distribute fifty grams or more of "cocaine base, also known as 'crack cocaine.'" The Court has requested briefing on the distinction, if any, in the United States Code and United States Sentencing Guidelines in the treatment of "cocaine base" and "crack."

Custer contends that although several substances are encompassed by the term "cocaine base," the term, as used in the relevant statutory and Guidelines provisions, refers only to "crack." All other forms of cocaine base are treated as cocaine powder. Accordingly, a conspiracy to distribute fifty grams or more of "crack" is punishable by a maximum term of life imprisonment, whereas the maximum sentence for a conspiracy to distribute fifty grams or more of other forms of "cocaine base" is twenty years. Because a determination that the conspiracy involved "crack," rather than "cocaine base," would raise the maximum sentence, "crack" is an element of the crime and must specifically be alleged in the indictment. It was not. Thus, notwithstanding Custer's guilty plea and the

admissions contained therein,[1] sentencing him for conduct involving "crack" would be error of constitutional dimension.

## FACTUAL BACKGROUND

On April 20, 2005, the grand jury issued a second, superseding indictment (Paper # 80), charging Custer and his co-defendants with a single count of conspiracy to distribute, and to possess with intent to distribute, "cocaine base, also known as 'crack cocaine.'" The indictment alleged "that the conspiracy involved 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as 'crack cocaine.'"

In its memorandum dated May 25, 2005, regarding Offense Conduct, the Government alleged that when Custer was arrested in New York City on March 16, 2004, the green Toyota Camry in which he had been riding was searched, and "two disc-like objects covered in yellow tape and wrapped in a bag" were removed. Offense Conduct Mem. ¶ 64. A chemist determined that the objects "contain[ed] approximately **496 grams of cocaine base** (net weight)." Id. ¶ 65 (emphasis in original). "The appearance of the cocaine base is an off-white, chunky substance which is crack cocaine." Id. In addition, agents seized from Custer's residence "packages of an off-white, chunky substance that appeared to be crack cocaine. The substance was subsequently tested . . . and found to be **approximately 29 grams of cocaine base** (net weight)." Id. ¶ 68 (emphasis in original).

---

[1] Custer does not deny or in any way retreat from his factual admission at the plea colloquy that his conduct involved crack cocaine. This memorandum advances the purely legal argument that sentencing him on the basis of this admission, rather than on the offense charged in the indictment, is unconstitutional.

2

On May 6, 2005, Custer pled guilty to the indictment. During the plea colloquy, Custer freely admitted that he was pleading guilty to charges involving "more than 50 grams of crack cocaine." Tr. 6 May 2005 at 7, 22. The Government announced that it would seek sentencing based on the Guideline range established for 1.5 kilograms (base offense level 38), with an additional three-point enhancement for managerial role. Id. at 8, 18-19.[2]

The colloquy concluded as follows:

> [THE COURT]: . . . I'm prepared to find that you knowingly, intelligently and voluntarily agree that you are guilty of conspiring to posses with intent to distribute more than 50 grams of crack cocaine. And that's it.
> Is that what you're prepared to plead guilty to?
>
> [THE DEFENDANT]: Yes.
>
> THE COURT: I do so find and the clerk may accept the plea on that understanding.
>
> THE CLERK: Christopher Custer, you have been charged in a second superseding indictment with violating 21 U.S.C., Section 846, conspiracy to possess with intent to distribute more than 50 grams of cocaine base.
> How do you plead to Count 1 of the superseding indictment, guilty or not guilty?
>
> THE DEFENDANT: Guilty.

Tr. 6 May 2005 at 27-28.

---

[2] Custer reserved his rights with respect to the enhancements sought by the Government. Tr. 6 May 2005 at 22.

ARGUMENT

BECAUSE THE PRESENCE OF "CRACK," AS OPPOSED TO OTHER FORMS OF "COCAINE BASE," INCREASES THE STATUTORY MAXIMUM SENTENCE, THIS FACT MUST BE PLED SPECIFICALLY IN THE INDICTMENT. THE GOVERNMENT'S FAILURE TO SPECIFY "CRACK" IN THE INDICTMENT CONSTRAINS THE COURT TO SENTENCE THE DEFENDANT AS IF THE CONSPIRACY INVOLVED POWDER COCAINE.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held, "[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." "In federal prosecutions, such facts must also be charged in the indictment." United States v. Cotton, 535 U.S. 625, 627 (2002) (citations omitted) (emphasis added). See Apprendi, 530 U.S. at 477 n.3; United States v. Jones, 526 U.S. 227, 243 n.5 (1999).

In this case, the fact that the controlled substance at issue was "crack," as opposed to any other form of "cocaine base," increases the defendant's statutory exposure from a maximum sentence of twenty years to a maximum life sentence. Accordingly, this fact must be specifically pled in the indictment. Because it was not, Custer must be sentenced as if his crime involved other forms of "cocaine base," which are treated as "cocaine" for sentencing purposes.

  A. Congress Intended for "Cocaine Base," as Used in the Statute, To Mean the Same Thing as "Cocaine Base" in the Sentencing Guidelines: Crack, and Nothing Else.

As the Court is well aware, both the United States Code and the United States Sentencing Guidelines treat crimes involving quantities of "cocaine base" the same as crimes involving one hundred times as much "cocaine." United States v. Armstrong, 517 U.S. 456, 478 (1996) (Stevens, J., dissenting); United States v. Andrade, 94 F.3d 9, 14-15

4

(1st Cir. 1996), and cases cited therein. Thus, under 21 U.S.C. § 841(b), a crime involving fifty *grams* of "cocaine base," id. § 841(b)(1)(A)(iii), and a crime involving five *kilograms* of "cocaine," id. § 841(b)(1)(A)(ii), are subject to the same punishment: "not less than 10 years or more than life." Likewise, the Guidelines assign on offense level of 32 to crimes involving between fifty and one hundred fifty *grams* of "cocaine base," and the same level to crimes involving five to fifteen *kilograms* of "cocaine." U.S.S.G. § 2D1.1(4) (2004).

According to U.S.S.G. § 2D1.1, Note (D), however, "'cocaine base,' for the purposes of this guideline, means 'crack.'" As Note (D) explains, "'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." Id. Note (D) was added by Amendment 487, effective November 1, 1993, to address a split within the Circuits. See U.S.S.G. App. C, amend. 487. "Under this amendment, forms of cocaine base other than crack (e.g., coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine." Id. In other words, "crack" is just one of several substances that can be scientifically characterized as "cocaine base," but it is the only substance to be treated as "cocaine base" for Guideline purposes. Thus, the base offense level for fifty grams of crack would be 32, § 2D1.1(c)(4), but the base offense level for fifty grams of any other form of cocaine base would be 16, § 2D1.1(c)(12).

Turning to the statutorily prescribed sentences, a majority of the Courts of Appeal have held that because "Congress and the Sentencing Commission intended 'cocaine base' to mean crack cocaine," the enhanced penalties in § 841(b) and the Guidelines

"apply to crack cocaine, and the lesser penalties apply to all other forms of cocaine." United States v. Booker, 70 F.3d 488, 494 (7th Cir. 1995), cert. denied, 517 U.S. 1111 (1996).[3]

Two principal lines of reasoning support the conclusion that "cocaine base" as used in § 841 means "crack" exclusively. First, from a chemical standpoint, "cocaine" and "cocaine base" are identical. Id. at 489-91; United States v. Brisbane, 367 F.3d 910, 912 (D.C. Cir.), cert. denied, 125 S. Ct. 342 (2004). To account for the fact that "cocaine base" is punished much more harshly than "cocaine," these courts have appealed to legislative history and concluded that Congress intended this Draconian treatment to apply solely to crimes involving crack. Booker, 70 F.3d at 492-94; Brisbane, 367 F.3d at 913-14; United States v. Fisher, 58 F.3d 96, 99 (4th Cir.), cert. denied, 116 S. Ct. 329 (1995).

Second, in an approach recently championed by Judge Ponsor in this District, courts have reasoned that by accepting Amendment 487, and the gloss it put on the definition of "cocaine base" as used in U.S.S.G. § 2D1.1, Congress necessarily adopted the same gloss on the meaning of "cocaine base" in the criminal code. United States v. Munoz-Realpe, 21 F.3d 375, 377-78 (11th Cir. 1994); United States v. Thomas, 360 F.

---

[3] See United States v. Brisbane, 367 F.3d 910, 913-14 (D.C. Cir.) cert. denied, 125 S. Ct. 342 (2004); United States v. Crawford, 83 F.3d 964, 966 (8th Cir.), cert. denied, 519 U.S. 903 (1996); United States v. Booker, 70 F.3d 488 (7th Cir. 1995), cert. denied, 517 U.S. 1111 (1996); United States v. Fisher, 58 F.3d 96 (4th Cir.), cert. denied, 516 U.S. 927 (1995); United States v. Munoz-Realpe, 21 F.3d 375, 378 (11th Cir. 1994); United States v. Shaw, 936 F.2d 412 (9th Cir. 1991); United States v. Levy, 904 F.2d 1026, 1032-34 (6th Cir. 1990), cert. denied sub nom. Black v. United States, 498 U.S. 1091 (1991). But see United States v. Barbosa, 271 F.3d 438, 467 (3d Cir. 2001), cert. denied, 537 U.S. 1049 (2002); United States v. Palacio, 4 F.3d 150 (2d Cir. 1993), cert. denied, 510 U.S. 1166 (1994); United States v. Butler, 988 F.2d 537, 542-43 (5th Cir.), cert. denied, 510 U.S. 956 (1993); United States v. Easter, 981 F.2d 1549, 1558 (10th Cir. 1992), cert. denied, 508 U.S. 953 (1993).

Supp. 2d 238, 242 (D. Mass. 2005). These courts reason that because the Sentencing Commission's amendments to the Guidelines are submitted to Congress, which may disapprove proposed amendments, 28 U.S.C. § 994(p), "[b]y allowing the amendment to take effect, Congress has given its imprimatur to the new definition of 'cocaine base.'" Munoz-Realpe, 21 F.3d at 377.

The First Circuit has held, with the minority view, that "cocaine base" as used in § 841 refers not just to "crack," but to all forms of cocaine base. It so held both before the 1993 amendment, United States v. Lopez-Gil, 965 F.2d 1124, 1134 (1st Cir.), cert. denied, 506 U.S. 981 (1992), and afterwards, United States v. Richardson, 225 F.3d 46, 49-50 (1st Cir. 2000), cert. denied, 531 U.S. 1203 (2001). Noting that the Richardson court did not address either the 1993 amendment or the subsequent split in the circuits, Judge Ponsor concluded that "if directly confronted with the issue, the First Circuit would agree with the Eleventh Circuit that there is no reason 'to assume that Congress meant for "cocaine base" to have more than one definition'" and that is construction of the term in the Guidelines was intended to limit the reach of the statute as well." Thomas, 360 F. Supp. 2d at 242 (quoting Munoz-Realpe, 21 F.3d at 378).

This prediction appears to have been incorrect. On October 25, 2005, in a case arising out of the District of Rhode Island, the First Circuit, taking cursory note of the split in the circuits and the 1993 amendment (but not referencing Judge Ponsor's published decisions), held that § 841 regulates "the possession of any form of 'cocaine base.'" United States v. Medina, 427 F. 3d 88, 92 (1st Cir. 2005).

The defendant, confident that Congress will speak more definitively on the issue, or that the Supreme Court will resolve the circuit split in his favor, see United States v.

7

Edwards, 397 F.3d 570, 577 (7th Cir. 2005) (noting that the "lingering and stratified circuit split on a matter of such importance to the administration of criminal justice surely warrants the attention of Congress or resolution by the Supreme Court"), maintains that "cocaine base" as used in § 841 means "crack," just as Congress intended in U.S.S.G. § 2D1.1.

Thus, while a violation of § 841(a) involving fifty grams or more of "crack" is punishable by a minimum mandatory terms of ten years to a maximum life sentence, 21 U.S.C. § 841(b)(1)(A)(iii), a violation involving fifty grams of any other form of "cocaine base," which must be treated as "cocaine," is punishable by a term of not more than twenty years, with no mandatory minimum, id. § 841(b)(1)(C) (violations involving lesser amounts of schedule II controlled substances punishable by a term of imprisonment "of not more than 20 years"). See Brisbane, 367 F.3d. at 914-15 (where proof of "crack" is lacking, defendant is guilty of lesser-included offense of distribution of "cocaine").

B.  Because the Presence of "Crack" Raises the Maximum Sentence, It Is an Element of the Crime and Must Be Pled in the Indictment.

The impact of this construction of "cocaine base" as used in § 841 is significant: "[I]f cocaine base means only crack then it will become necessary for the Government to charge in the indictment, and for a jury to find beyond a reasonable doubt, that the substance in issue is crack (or else pursue a charge for the lesser included cocaine offense)." United States v. Perry, 389 F. Supp. 2d 278, 291 (D.R.I. 2005).

In United States v. Cotton, supra, the Government tried the defendants on a superseding indictment alleging a conspiracy to distribute a "detectable amount" of cocaine and cocaine base. 535 U.S. at 627-28. Under § 841(b)(1)(C), the defendants faced a maximum term of twenty years. Id. at 628. However, "[c]onsistent with practice

in the federal courts at the time," the District Court found that the defendants were responsible for over fifty grams of cocaine base and sentenced them under § 841(b)(1)(A), which carried a life sentence. Id. The defendants did not object "that these sentences were based on an amount of drug quantity [sic] not alleged in the indictment." Id. The Supreme Court accepted the Government's concession "that the indictment's failure to allege a fact, drug quantity, that increased the statutory maximum sentence rendered respondents' enhanced sentences erroneous under the reasoning of Apprendi and Jones." Id. at 632.

Here, the Government failed specifically to allege "crack" in the indictment. The indictment charges the defendant with a crime involving "50 grams or more of cocaine base, also known as crack cocaine." As the discussion in Argument A above makes plain, "cocaine base" and "crack cocaine" are not synonymous; all forms of cocaine base are not "also known as crack." Moreover, the Government cannot contend that "cocaine base" as used in the indictment was limited to crack; its position in the trial of co-defendants Tejeda and Figueroa was, and continues to be, that it had no obligation under this indictment to prove "crack" to the jury. See Memorandum of Def. William Tejeda in Support of Mot. To Preclude Application of Enhanced Guideline Penalties for "Crack" in Calculating Def.'s Sentence. Surely the Government cannot be heard to argue that the language of the indictment limited it to proof of "crack" to the exclusion of all other forms of "cocaine base."

> C.   Because the Defendant Cannot Be Sentenced Under the Statutory Provisions for Crack as a Matter of Law, the Admissions in his Guilty Plea Are Not Relevant.

Custer must be sentenced for the crime charged in the indictment – that is, a conspiracy involving the equivalent of fifty grams of powder cocaine, punishable by a maximum twenty-year sentence, with no mandatory minimum – even though, at this guilty plea colloquy, he admitted to a conspiracy involving crack.

In <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 59 (1st Cir. 2001), the First Circuit considered a case in which the indictment failed to allege a specific quantity of marijuana, thus exposing the defendant to punishment under the "default statutory maximum" sentence of five years. The defendant pled guilty, admitting to an amount that, if charged in the indictment, would have carried a maximum life sentence, and the District Court imposed a 151-month sentence. <u>Id</u>. at 58-59.

The court, stating that "an <u>Apprendi</u> error may have occurred," wondered whether the defendant's guilty plea "undermine[d]" his claim. <u>Id</u>. at 60. Noting that "any such argument would have to overcome <u>Apprendi</u>'s strongly-worded suggestion that any fact, other than a prior conviction, that enhances the statutory maximum sentence for a crime must be both charged in the indictment and found by a jury beyond a reasonable doubt," <u>id</u>. at 60-61 (collecting cases[4]), the court assumed without deciding that the defendant's sentence was imposed in violation of <u>Apprendi</u>, <u>id</u>. at 61.

---

[4] Among the cases cited was <u>United States</u> v. <u>Pease</u>, 240 F.3d 938, 943-44 (11th Cir.), <u>cert. denied</u>, 534 U.S. 967 (2001), in which the court "found <u>Apprendi</u> error based on the omission of drug quantity from the indictment even though the defendant pleaded to trafficking in a specific amount of contraband sufficient to trigger the enhanced sentence." <u>Duarte</u>, 246 F.3d at 61.

Because the defendant in Duarte did not raise his Apprendi claim at sentencing, the First Circuit was able to consider his claim under the "plain error" standard of review. Viewing the error from that perspective, the First Circuit found the defendant's admissions fatal under the third element, whether the error affected his "substantial rights." Id. at 61-63. Similarly, in Cotton, discussed above, the Supreme Court reviewed the unpreserved claim of Apprendi error under the plain-error standard and found that because the evidence of drug quantity produced at trial was so overwhelming, the illegal sentence "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings," the fourth element of plain error. Cotton, 535 U.S. at 631-33.

Here, of course, Custer is timely asserting his constitutional claim at sentencing, and the plain-error analysis is simply inapplicable. Notwithstanding Custer's admissions, neither the Government nor this Court can "overcome Apprendi's strongly-worded suggestion that any fact, other than a prior conviction, that enhances the statutory maximum sentence for a crime must be . . . charged in the indictment." Duarte, 246 F.3d at 60. Custer has pled guilty to an indictment charging, in effect, conspiracy to distribute a detectable amount of powder cocaine, and must be sentenced accordingly.

## CONCLUSION

For the foregoing reasons, this Court must sentence Custer by reference to the parameters set forth in 21 U.S.C. § 841(b)(1)(C), establishing a sentencing range from zero to twenty years.

Respectfully submitted,

CHRISTOPHER T. CUSTER

By his attorneys,

_____
Mark D. Smith, BBO # 542676
Gregory I. Massing, BBO # 557638
Laredo & Smith, LLP
15 Broad Street, Suite 600
Boston, MA 0210911
(617) 367-7984

Dated: December 16, 2005