**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No.** |
| | ) | **04-10098-WGY** |
| **v.** | ) | |
| | ) | |
| **CHRISTOPHER T. CUSTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**
**RELATING TO DEFENDANT CHRISTOPHER CUSTER**

The United States of America, by its attorney, Michael J.
Sullivan, United States Attorney for the District of
Massachusetts, respectfully submits this Sentencing Memorandum
setting forth its position regarding the sentencing of defendant
Christopher Custer ("Custer").  Sentencing is set for March 28,
2006.

**I.    Introduction**

On April 20, 2005, a Second Superseding Indictment was
returned against Custer and his five co-defendants charging them
with conspiracy to distribute, and to possess with intent to
distribute, over 50 grams of cocaine base, in violation of Title
21, United States Code, Sections 846 and 841(b)(1)(A)(iii).

On May 6, 2005, Custer pled guilty to the charges.  During
the plea colloquy, Custer specifically admitted that the charges
involved "crack" cocaine.  At the time, the government contended
that Custer was responsible for over 1.5 kilograms of crack
cocaine, and that he should be given a three level role
enhancement, pursuant to § 1B1.1(b) of the Sentencing Guidelines.

The court stated that all issues relating to enhancements would
be resolved at sentencing.

## II.  **The Presentence Report**

Probation determined that Custer is responsible for
approximately 5.718 kilograms of crack cocaine.  It is the
understanding of the government that Custer does not contest
Probation's conclusion with respect to drug weight.

The government agrees with Probation that Custer has a base
offense level of 38, but disagrees with Probation that he is only
responsible for 5.718 kilograms.  The government suggests that
the evidence shows that Custer should be responsible for more
than 14 kilograms of crack cocaine.[1]  The court need not resolve
this conflict, however, because the base offense level remains
the same.  Either way, Custer has a base offense level of 38
under the Sentencing Guidelines.

Probation concluded that there were not any applicable
sentencing enhancements, and that Custer was entitled to a three
level reduction for acceptance of responsibility.  At criminal
history category IV, and at an adjusted offense level of 35,
Probation concluded that Custer was facing between 235 to 293

---

[1]The evidence in this proceeding, as set forth in the
unobjected to facts (PSR ¶¶ 13 and 16), shows that the
organization obtained approximately 500 grams of crack from co-
defendant William Tejeda every ten days to two weeks from January
2003, through March 16, 2004.  Custer should be found responsible
for this entire amount - which is approximately 14.5
kilograms(approximately 30 trips x 500 grams).

months in custody, a minimum five year term of supervised release, and a fine between $20,000 and $4,000,000.

The government does not agree with Probation's final conclusion because Custer should also be subject to a three level role enhancement pursuant to Section 3B1.1(b) of the Sentencing Guidelines.  As set forth more fully below, the government intends to present the testimony of co-defendant Jennifer Pavao ("Pavao") at Custer's sentencing in support of the role enhancement.  If the Court agrees, Custer would have a total offense level of 41, and, with a three level adjustment for acceptance of responsibility, an adjusted offense level of 38.[2] At AOL 38 and CHC IV, Custer faces a period of incarceration of 324-405 months, a fine between $25,000 and $4,000,000 and a period of supervised release of five years to life.

III.  **Government's Evidence Regarding Role**

The government contends that Custer should be given a role enhancement because he was responsible for the recruitment, direction and supervision of co-defendant Pavao.  Because this conspiracy involved five or more individuals, under § 3B1.1(b) of the Guidelines, the three level enhancement is applicable.[3]

---

[2]The government intends to file a motion pursuant to §3E1.1(b) of the Guidelines, stating that Custer timely notified the government of his intention to plead guilty.

[3]In fact, this conspiracy involved more than five members - Custer, Pavao, co-defendants Manuel Mendes, William Tejeda, Carmen Figueroa, Desiree Alves, and unidentified customers.

The government expects that the testimony of Pavao will establish that her involvement in this crack conspiracy arose solely because of Custer.  She will testify that, beginning in September, 2003, she and Custer began to see each other in the evenings.  During these visits, Custer asked Pavao to drive him around.  Pavao agreed, and soon learned that Custer was making deliveries to his drug customers.  Nonetheless, Pavao continued to drive Custer to his drug customers, because he asked her to do so.

Pavao also will testify that Custer asked her to accompany him on his trips to New York.  Initially, Pavao will testify, she was unaware of the nature of the trips; however, she later learned that one of the purposes of the trip was to pick up drugs from Custer's source.  After realizing this, Pavao continued to travel to New York with Custer because he asked her to do so.

Pavao will testify that when she would make drug deliveries with Custer, he told her where to drive.  She did not know Custer's customers at all and, other than driving, she was not involved in Custer's transactions.  Indeed, she waited in the car while Custer delivered the drugs and collected the proceeds. Pavao will testify that she did not know co-defendant William Tejeda, the New York supplier, until after her arrest.  She will testify that she did not have a relationship with Desiree Alves, Carmen Figueroa or Manuel Mendes.  She will testify that Custer

4

did not pay her for driving him around, but that when she went to New York with him, he would occasionally give her marijuana that he had after meeting with Tejeda.

Finally, Pavao will testify that she had a drug customer, who had asked her to provide her with crack.  Pavao agreed, and sold the drugs approximately on 10 occasions.  She got the drugs from Custer and had to re-pay Custer $40.00 each time.  She will testify that she sold the drugs for approximately $60-80.00 and that she could keep the change.

Because the evidence will show that Custer recruited and supervised Pavao during the course of this conspiracy, his conduct clearly falls within the conduct anticipated in §3B1.1(b).  See, United States v. Bey, 188 F.3d 1(1st Cir. 1999).

## IV.  Conclusion

Based upon the foregoing, a § 3B1.1(b) role enhancement is appropriate.  Accordingly, it is the position of the United States that Custer has a base offense level of 38, which is increased by three levels to level 41.  With a three level reduction for acceptance of responsibility, Custer has a total offense level of 38, and at CHC IV, should be sentenced to a

priod of incarceration of 324-405 months, a fine between $25,000

and $4,000,000 and a period of supervised release of five years

to life.

                              MICHAEL J. SULLIVAN
                              United States Attorney


                       By:   /s/ Susan M. Poswistilo
                              SUSAN M. POSWISTILO
                              Assistant U.S. Attorney

                    **CERTIFICATE OF SERVICE**


     I hereby certify on this 27th day of March, 2006, that the
United States' Sentencing Memorandum filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non registered
participants.

                              /s Susan M. Poswistilo
                              Susan M. Poswistilo
                              Assistant United States Attorney